# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARTIN CHAIDEZ, JESSICA GALAN, STEPHANIE GALAN, KEVIN ZUNINGA, ANTONIO ZUNINGA, ANTOINETTE DELREAL, and STACY DELREAL, on behalf of themselves and similarly situated job applicants, <br><br> Plaintiffs, <br><br> vs. <br><br> FORD MOTOR COMPANY, ALLAN MILLENDER, and other UNKNOWN PERSONS, <br><br> Defendants. | Case No. |

## CLASS ACTION COMPLAINT

Plaintiffs, Martin Chaidez, Jessica Galan, Stephanie Galan, Kevin Zuninga, Antonio Zuninga, Antoinette Delreal, and Stacy Delreal, on behalf of themselves and other similarly situated job applicants complain against Defendants Ford Motor Company, Allan Millender and other Unknown Persons, as follows:

## I. INTRODUCTION

1. This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, et seq. ("Title VII") for Defendant's intentional discrimination against Hispanic and/or Latino laborers in its hiring practices. Ford Motor Company operates its Chicago Assembly Plant near Harvey, Illinois (the "Plant"). Ford staffs the Plant primarily through the Harvey, Illinois unemployment office. Beginning in approximately 2012, and continuing thereafter, Plaintiffs, all Hispanic and/or Latino applicants, were denied employment at the Plant on the basis of their race and or ethnic descent. Plaintiffs were qualified to work at the Plant as line workers. Plaintiffs witnessed other qualified Hispanic and/or Latino laborers being denied the

1

opportunity to seek or qualify for assignment to work at the Plant through the Harvey unemployment office while other, non- Hispanic and/or Latino applicants who appeared at the Harvey, Illinois unemployment office were given the opportunity to qualify for assignment to work at the Plant.

2. Plaintiffs will seek to certify their Title VII claims as class actions pursuant to Fed. R. Civ. P. Rule 23(a) and (b).

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiffs' Title VII claim pursuant to 28 U.S.C. §1331, arising under 42 U.S.C. § 2000e, *et seq*.

4. Venue is proper in this judicial district as a substantial number of the facts and events giving rise Plaintiffs' claims occurred in this judicial district and as Defendants maintained offices and transacted business within this jurisdiction.

5. On March 10, 2016 Plaintiffs filed charges of discrimination based on disparate treatment and/or disparate impact against Ford with the EEOC. (Group Exhibit A, Class EEOC Charges.) On January 24, 2017, the EEOC issued a Notice of Right to Sue to Plaintiffs. Plaintiffs' counsel received the notices on January 30, 2017. Plaintiffs' Right to Sue Notices from the EEOC are attached hereto as Group Exhibit B.

6. This case is timely filed.

## III. THE PARTIES

7. Plaintiff Martin Chaidez is of Hispanic and/or Latino descent; is, and at all relevant times has been qualified to work at Ford; is, and at all relevant times has been a job applicant at Ford and sought employment at Ford through the Harvey unemployment office.

8. Plaintiff Stephanie Galan is of Hispanic and/or Latino descent; is, and at all relevant times has been qualified to work at Ford; is, and at all relevant times has been a job applicant at Ford and sought employment at Ford through the Harvey unemployment office.

9. Plaintiff Jessica Galan is of Hispanic and/or Latino descent; is, and at all relevant times has been qualified to work at Ford; is, and at all relevant times has been a job applicant at Ford and sought employment at Ford through the Harvey unemployment office.

10. Plaintiff Kevin Zuninga is of Hispanic and/or Latino descent; is, and at all relevant times has been qualified to work at Ford; is, and at all relevant times has been a job applicant at Ford and sought employment at Ford through the Harvey unemployment office.

11. Plaintiff Antonio Zuninga is of Hispanic and/or Latino descent; is, and at all relevant times has been qualified to work at Ford; is, and at all relevant times has been a job applicant at Ford and sought employment at Ford through the Harvey unemployment office.

12. Plaintiff Antoinette DelReal is of Hispanic and/or Latino descent; is, and at all relevant times has been qualified to work at Ford; is, and at all relevant times has been a job applicant at Ford and sought employment at Ford through the Harvey unemployment office.

13. Plaintiff Stacy DelReal is of Hispanic and/or Latino descent; is, and at all relevant times has been qualified to work at Ford; is, and at all relevant times has been a job applicant at Ford and sought employment at Ford through the Harvey unemployment office.

14. Defendant Ford Motor Company ("Ford") is a Michigan corporation that operates its Chicago Assembly Plant near Harvey, Illinois. Ford is an employer as defined by 42 U.S.C. § 2000e(b) and at all times was engaged in an industry affecting commerce.

15. Defendant Allan Millender ("Millender") is an African American male, who is the local United Auto Workers' Chairman at the Plant. Upon information and belief, Millender uses his

position to influence the Ford Human Resources and Labor Relations offices, which are responsible for hiring line workers at the Ford plant.

## IV.  FACTUAL BACKGROUND

16. Ford employs the vast majority of the line workers at the Plant through the Harvey, Illinois unemployment office.

17. In the normal course, Ford notifies current Ford workers that Ford is hiring and instructs its employees to tell interested applicants, including Plaintiffs, to report to the Harvey, Illinois unemployment office to apply for the line worker position.

18. Upon reporting to the Harvey unemployment office, the applicants fill out a contact information form and submit it to an employee at the Harvey, Illinois unemployment office who is then supposed to forward the information to Ford to be compiled into a referral list and sent to Aon Consulting to begin pre-employment testing.  After an applicant passes a basic skills test, the applicant submits to a drug-test, and background check prior to hire. (Exhibit C, Contact Information Form.)

19. Ford's hiring practice has produced a primarily African American workforce at the Plant to the overwhelming detriment of Hispanic and/or Latino applicants. Beginning in 2013 few, if any,  Hispanic and/or Latino line workers have been hired to work at the Ford facility. The new classes of line workers over the last several years have been predominantly, if not exclusively African American.  (See Exhibit D, Photos of new classes of Line workers.)

20. Plaintiffs are aware, through information received from friends and family members working within the Plant, that only a small percentage of line workers at the Plant are Hispanic and/or of Latino descent.

21. The dearth of Hispanic and/or Latino line workers at the Plant is the result of its application process. Either the pre-employment testing creates an impermissibly adverse impact on Hispanics and/or Latinos, or Ford itself is excluding those of Hispanic and/or Latino descent from being processed for hire.

**Plaintiffs Have Been Excluded From Employment at Ford on the Basis of their Race and/or National Origin**

22. Beginning in or about 2013 and continuing thereafter, Plaintiffs and other persons of Hispanic and/or Latino descent applied for employment at the Plant through the Harvey, Illinois unemployment office.

23. Ford almost exclusively hires line workers through the Harvey, Illinois unemployment office. Upon information and belief, Ford notifies the Harvey unemployment office that they will accept applications for line workers at during various periods. Most, if not all of those hired through the Harvey, Illinois unemployment office, or other means, are of African American descent.

24. On or about August 13, 2015, Plaintiff Chaidez applied to be a line worker at the Plant by filling out a contact information form at the Harvey unemployment office. Several months later, Chaidez received a letter informing him that he was not hired.

25. On or about August 13, 2015 and again in September 2015, Plaintiff Stephanie Galan applied to be a line worker at the Plant by filling out a contact information form at the Harvey unemployment office. She was invited to take a pre-employment basic skills test after one of her applications. Several months later, she was informed she was not hired.

26. On or about August 13, 2015 and again in September 2015, Plaintiff Jessica Galan applied to be a line worker at the Plant by filling out a contact information form at the Harvey unemployment office. Jessica Galan was never contacted following those applications. Later in

5

2015, Jessica Galan was instructed by the Harvey unemployment office to apply for a line worker position on the Illinois Department of Employment Security website. She applied again and was never contacted for a position of line worker.

27. In September 2014 and again in August 2015, Plaintiff Kevin Zuninga applied to be a line worker at the Plant by filling out a contact information form at the Harvey unemployment office. Plaintiff Kevin Zuninga was never contacted by Ford, or any of its agents, as to the status of his application.

28. In September 2014 and again in August 2015, Plaintiff Antonio Zuninga applied to be a line worker at the Plant by filling out a contact information form at the Harvey, Illinois unemployment office. Plaintiff Antonio Zuninga was never contacted by Ford, or any of its agents, as to the status of his application.

29. In September 2014, February 2015 and again in August 2015, Plaintiff Antoinette DelReal applied to be a line worker at the Plant by filling out a contact information form at the Harvey, Illinois unemployment office. Plaintiff Antoinette DelReal has never been contacted by Ford, or any of its agents, as to the status of her application.

30. In September 2014, February 2015, and August 2015 Plaintiff Stacy DelReal applied to be a line worker at the Plant by filling out a contact information form at the Harvey, Illinois unemployment office. Plaintiff Stacy DelReal has never been contacted by Ford, or any of its agents, as to the status of her application.

31. Each Plaintiff, and similarly situated Hispanic and/or Latino applicants, was qualified for the position of line worker yet was not hired on the basis of their race and/or national origin due to Ford's hiring process which results in the almost exclusive hiring of African American applicants.

32. The lack of Hispanic or Latino workers is not consistent with the racial demographics of the areas surrounding the Ford plant.

**Intentional Scheme to Exclude Hispanics and/or Latinos from Employment at Ford**

33. Alternatively, the lack of Hispanic and/or Latino line workers is due to the hiring scheme put in place by Allan Millender the United Auto Workers' Plant Chairman at the Plant. As part of this scheme, the Harvey, Illinois unemployment office, at the direction of, and in concert with Millender, either does not accept, or destroys applications or contact information forms from Hispanic and/or Latino applicants; does not allow the applicants to take pre-employment testing, or otherwise interferes with the applications of Hispanic and/or Latino applicants.

34. In 2013, and at all relevant time thereafter, internal hiring at the Plant was conducted by Ford's Human Resources and Labor Relations offices. Millender, and other unknown persons working within Ford's Human Resources and Labor Relations offices have used their positions to influence hiring at Ford and create a predominantly African American workforce that will support Millender's union position. Ford is aware of, or should have been aware of Millender's influence and the unlawful hiring practices at the Harvey plant. (*See* Exhibit E, Email reported to have been sent to Millendar.)

35. Indeed, Ford had previously terminated Mr. Millender based on charges of discrimination, yet, upon information and belief, allowed him to be returned to his position based upon an agreement with the union.

36. Ford benefits from Millendar's position as he can facilitate collective bargaining that is beneficial to Ford.

37. Upon information and belief, Mr. Millender uses his union position to exercise authority over the hiring practices of line workers at Ford in order to further his standing within the union. (*See* Ex. E.)

38. Mr. Millender, in an effort to secure his union position, has implemented a scheme whereby his unknown cohorts within Ford and his connections at the Harvey, Illinois unemployment office exclude Hispanic and/or Latino applicants in favor of African American applicants.

39. Upon information and belief, other Ford employees have commended Mr. Millender for his actions and have used Ford's internal email system to communicate about Mr. Millender's intentional discrimination against non-African Americans. (*See* Ex. E.)

40. As part of this scheme, upon information and belief, unknown persons within the Harvey, Illinois unemployment office personally distribute contact information forms to Hispanic and/or Latino applicants but either do not forward the information to Ford for further testing, or interfere in some other way with the application process. Though there are no racial or ethnic identifiers on the contact information forms, individuals at the Harvey, Illinois unemployment office personally observe the applicants when they apply.

41. Due to the scheme concocted by Mr. Millender and his cohorts, however, Latino and/or Hispanic applicants who have, in person, submitted contact information forms to certain unknown individuals at the Harvey unemployment office, are not moved forward in the application process and are never allowed to begin pre-employment testing, let alone be hired.

42. Even if Latino and/or Hispanic applicants have been forwarded to individuals within Ford's Human Resources or Labor Relations offices to be sent for pre-employment testing, upon information and belief, individuals in both the Human Resources and Labor Relations offices, at

8

the direction of and in concert with Millender, fail to forward the contact information of Hispanic and/or Latino applicants to its testing facility for hire.

43. Ford is aware, or should be aware of the scheme not to hire Hispanic and/or Latino applicants based upon the lack of Hispanic and/or Latino applicants recommended for hire and the fact that less qualified non-Hispanics and/or Latinos are hired at Ford.

44. Each and every Plaintiff and other Hispanic and/or Latino line worker applicant was denied employment at the Plant based on Millendar and Ford's intentionally discriminatory scheme.

## V. CLASS ACTION ALLEGATIONS

45. Plaintiffs will seek to certify their claims for race-based discrimination claim arising under Title VII (Counts I and II) as class actions pursuant to Fed. R. Civ. P. Rule 23(a) and (b) because:

   a. The class is so numerous that joinder of all members is impracticable;

   b. While the precise number of Class Members has not been determined at this time, Plaintiffs are informed and believe that Defendants employed hundreds of individuals in Illinois during the Title VII Class Period;

   c. There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members. These common questions of law and fact include, without limitation: Whether Defendant Ford has a policy or pattern and practice in place in its hiring practices that results in discrimination against Hispanic and/or Latino line workers.

## COUNT I-TITLE VII-DISPARATE TREATMENT

46. Plaintiffs hereby reallege and incorporate paragraphs 1-44 as though set forth fully herein as this paragraph 46.

47. This Count arises under Title VII for Defendant Ford's discriminatory practices in hiring, either directly, or through its agents, specifically Millender and individuals at the Harvey, Illinois unemployment office, as described more fully in paragraphs 16-21 and 33-44, *supra*, resulting in disparate treatment of Plaintiffs and a class of Hispanic and/or Latino line worker applicants.

48. As described more fully in paragraphs 16-21 and 33-44, *supra*, Defendants Ford, Millender and other unknown agents engaged in a pattern and practice of intentional discrimination against other similarly situated Hispanic and/or Latino applicants based on their race, and/or national origin, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

49. As a direct and proximate result of the above-alleged acts or omissions of Defendants, Plaintiffs and other similarly situated Hispanic and/or Latino applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation. Defendant Ford's conduct was willful and/or reckless, warranting the imposition of punitive damages.

50. Ford failed to exercise reasonable care to ensure that its agents involved in the hiring process at Ford did not engage in discriminatory assignment practices.

51. The Class that Plaintiffs seek to represent is made up of and defined as: All Hispanic and/or Latino applicants who sought employment at Ford, either directly or through its agents, including but not limited to, Millender and individuals in the Harvey, Illinois unemployment office, but were not assigned to work at Ford because of their race and/or national origin within the period of three hundred days prior to the filing of the Plaintiffs' EEOC charges up through and including the date of judgment.

**WHEREFORE,** Plaintiffs and the Class respectfully pray that this Court:

A) allow this action to proceed as a class action against Defendants pursuant to Rule 23;

B) enjoin Ford from continuing or permitting future violations of Title VII for racial discrimination against Hispanic and/or Latino applicants;

C) enter a judgment in their favor and against For for back pay and front pay damages for Plaintiffs and the Class in amounts to be determined at trial;

D) enter a judgment in their favor and against Ford for compensatory damages for Plaintiffs and the Class in amounts to be determined at trial;

E) enter a judgment in their favor and against Defendants for punitive damages for Plaintiffs and the Class in amounts to be determined at trial;

F) for all reasonable attorney's fees and costs in bringing this action; and

G) for such other relief as this Court deems just and equitable.

## COUNT II-TITLE VII-DISPARATE IMPACT

52. Plaintiffs hereby incorporate and re-allege paragraphs 1 through 44 as though set forth herein, as this paragraph 52.

53. This Count arises under Title VII for Defendant Ford's policy and practice of hiring African-American line workers over Hispanics and/or Latinos, either directly or through its agents, Allen Millender and individuals at the Harvey, Illinois unemployment office, as described more fully in paragraphs 16-32, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of Hispanic and/or Latino line worker applicants.

54. As described more fully in paragraphs 16-32, *supra*, Defendant Ford has engaged in a practice of securing the vast majority of its line workers through its internal Human Resources and Labor Relations offices and the Harvey, Illinois unemployment office.

55. Ford's practice of securing line workers at the Plant through Millender and agents at the Harvey, Illinois unemployment office, who have created a system by which African American

applicants are almost exclusively hired to the detriment of Hispanic and/or Latino applicants, has caused a significant disparate impact on Plaintiffs and other similarly situated Hispanic and/or Latino applicants who apply to Ford.

56. As a direct and proximate result of the above-alleged acts or omissions of Defendants, Plaintiffs and other similarly situated Hispanic and/or Latino applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

57. Ford failed to exercise reasonable care to ensure that its hiring process did not have a disparate impact on Hispanic and/or Latino applicants.

54. The Class that Plaintiffs seek to represent is made up of and defined as: All Hispanic and/or Latino applicants who sought employment at Ford, either directly or through its agents, including but not limited to, Millender and individuals in the Harvey, Illinois unemployment office, but were not assigned to work at Ford because of their race and/or national origin within the period of three hundred days prior to the filing of the Plaintiffs' EEOC charges up through and including the date of judgment.

**WHEREFORE**, Plaintiffs and the Class respectfully pray that this Court:

A) allow this action to proceed as a class action against Ford pursuant to Rule 23;

B) enjoin Ford from continuing or permitting future violations of Title VII for racial discrimination against Hispanic and/or Latino applicants;

C) enter a judgment in their favor and against Ford for back pay and front pay damages for Plaintiffs and the Class in amounts to be determined at trial;

D) enter a judgment in their favor and against Defendants for compensatory damages for Plaintiffs and the Class in amounts to be determined at trial;

E) for all reasonable attorney's fees and costs in bringing this action; and for such other relief as this Court deems just and equitable.

**Plaintiff demand trial by Jury.**

Respectfully submitted,


_/s/ James L. Bizzieri_
Attorney for Plaintiffs

James L. Bizzieri (6284686)
Attorney for Plaintiffs
Bizzieri Law Offices, LLC
10258 S. Western Ave., Suite 210
Chicago, IL 60643
773-881-9000